Case 3:08-cv-03317-VRW    Document 18    Filed 08/28/2008    Page 1 of 10

TUCKER ELLIS & WEST LLP
CURTISS L. ISLER STATE BAR NO. 146903
515 South Flower Street
Forty Second Floor
Los Angeles, CA 90071-2223
Telephone: 213.430.3400
Facsimile: 213.430.3409
Email: curt.isler@tuckerellis.com

TUCKER ELLIS & WEST LLP
LANCE D. WILSON STATE BAR NO. 183852
135 Main Street, Suite 700
San Francisco, California 94105
Telephone: (415) 617-2400
Facsimile: (415) 617-2409
Email: lance.wilson@tuckerellis.com

Attorneys for Defendant
UNITED TECHNOLOGIES CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINAS BELK and ANNIE BELK,<br><br>Plaintiffs,<br><br>v.<br><br>BUCYRUS INTERNATIONAL, INC., et al<br><br>Defendants. | Case No. **C 08-03317 VRW**<br><br>**DEFENDANT UNITED TECHNOLOGIES CORPORATION'S OPPOSITION TO MOTION TO REMAND** |

## I. STATEMENT OF FACTS

Plaintiff Finas Belk ("Plaintiff") filed a complaint in San Francisco County Superior Court on May 30, 2008, naming United Technologies Corporation ("UTC") and numerous other defendants and claiming that he suffers from an asbestos-related injury due to his occupational and non-occupational exposure to asbestos. As to UTC, Plaintiff alleges it defectively designed (and failed to warn regarding such defects) jet engines that it supplied to the United States

1
OPPOSITION TO MOTION TO REMAND
CASE NO. C 08-03317 VRW

SFOiManage/074908/000541/160213/1

1 Military that exposed him to asbestos while he served in the military from 1957-1976. The
2 engines at issue are the Pratt & Whitney (a division of UTC) J57 and TF33 jet engines.
3    Plaintiff served the complaint and summons on UTC on June 10, 2008. UTC removed
4 the case to federal court on July 9, 2008. UTC removed the case pursuant to 28 USC § 1442
5 (a)(1) "federal officer removal" for evaluation of its military contractor immunity defense in a
6 federal forum. Plaintiff filed a motion to remand this matter, which UTC opposes herein.

## II. STATEMENT OF ISSUES

Plaintiff's motion raises the following issues:

1) The standard under which the Court is to consider a removal under 28 USC § 1442(a)(1) on a motion to remand. Plaintiff argues for a narrow application of the removal statute citing Matheson v. Progressive Speciality Insurance Company, 319 F.3d 1089 (9th Cir. 2003), Gaus v. Miles, Inc., 980 F.2d 564 (9th Cir. 1992), and Alsup v. 3-Day Blinds, 435 F.Supp. 2d 838 (S.D.Ill 2006). UTC argues that the Ninth Circuit has indicated that a liberal standard is to be applied in favor of removal on the basis of federal officer citing Durham v. Lockheed Martin Corporation, 445 F.3d 1247 (9th Cir. 2006).

2) The application of the holding in In re Hawaii Fed. Asbestos Cases, 960 F.2d 806 (9th Cir. 1992) with respect to determining military equipment that is eligible for the military contractor defense. Plaintiff argues that to qualify for military contractor immunity UTC must and does not establish that the equipment in question was not available to commercial users. UTC argues that the opinion in In re Hawaii is consistent with the Supreme Court's holding in Boyle v. United Technologies Corporation, 487 U.S. 500 (1988) in that the thrust of the first prong of the Boyle analysis is that the equipment at issue be developed for the government with the government making involved judgments as to the design and manufacture (as opposed to the equipment at issue being developed for commercial users and the government purchasing it after the fact because it coincidentally filled a need for the

military). UTC argues that its removal petition and supporting papers establish that the jet engines in question were designed and manufactured with the U.S. government controlling the process, carefully considering and approving every plan and part, and making involved judgments as to the design and manufacture of the jet engines.

3) Whether the proffered evidence of UTC to support the removal, the declarations of Allan Shiffler and William Ringo, contain sufficient foundation to meet each prong of the Boyle test and therefore support UTC's removal of this matter to federal court. Plaintiff relies on Snowdon v. A.W. Chesterton Company, et al., 366 F.Supp.2d 157 (D.Me.2005) and Hilbert v. McDonnell Douglas Corp., et al., 529 F.Supp.2d 187 (D. Mass.2008) in urging this Court to reject UTC's declarations. UTC argues that there is sufficient foundation in the declarations at issue, that Snowdon and Hilbert are easily distinguished from the facts of this case, and that Machnik v. Buffalo Pumps Inc., 506 F.Supp.2d 99 (D.Conn 2007) is a much better guide on this issue if this Court is interested in considering opinions from District Courts outside of the Ninth Circuit.

### III. ARGUMENT

**A. CONTRARY TO PLAINTIFF'S ASSERTIONS OF THE LAW, THE STATUTE FOR FEDERAL OFFICER REMOVAL IS TO BE LIBERALLY CONSTRUED IN FAVOR OF REMOVAL.**

Plaintiff claims that "the removal statute must be construed in favor of remand" (Plaintiff's motion at 8:1). Plaintiff's assertion of the law is incorrect. In an attempt to support of this incorrect statement of law Plaintiff initially cites Matheson v. Progressive Specialty Insurance Company, 319 F.3d 1089, 1090 (9th Cir. 2003) and Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). Both Matheson and Gaus are cases where removal was evaluated under diversity and amount in controversy pursuant to 28 U.S.C. § 1332. Neither court reviewing the Matheson or Gaus cases considered the standard for removal under 28 U.S.C. § 1442 (federal officer removal) which is the basis for removal in the instant case. *Id.*

3
OPPOSITION TO MOTION TO REMAND
CASE NO. C 08-03317 VRW

SFOiManage/074908/000541/160213/1

1   Plaintiff also relies on Alsup v. 3-Day Blinds, 435 F.Supp.2d 838, 843 (S.D.Ill.2006) which is an opinion from the district court for the Southern District of Illinois. What Plaintiff does not cite, discuss or reference anywhere in his moving papers is the Ninth Circuit's direction and opinion on this exact issue in Durham v. Lockheed Martin Corporation, 445 F.3d 1247 (9th Cir. 2006).[1] In Durham, at page 1252, the Ninth Circuit flatly rejects Plaintiff's assertion of the law on this issue:

> The district court began its analysis of this question by noting that "[r]emoval statutes are to be strictly construed, and any doubts as to the right of removal must be resolved in favor of remanding to state court." As to section 1441 removals, the district court is correct, see Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir.1992). (per curiam), but we do not interpret our jurisdiction under section 1442 so strictly. Congress passed the federal officer removal statute to protect the federal government from South Carolina's attempt to nullify federal tariff laws in the 1830s. See Gay v. Ruff, 292 U.S. 25, 32, 54 S.Ct. 608, 78 L.Ed. 1099 (1934.). And the Supreme Court has mandated a generous interpretation of the federal officer removal statute ever since: "It scarcely need be said that such measures are to be liberally construed to give full effect to the purposes for which they were enacted." Colorado v. Symes, 286 U.S. 510, 517, 52 S.Ct. 635, 76 L.Ed. 1253 (1932). The Supreme Court "has held that the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).' " Arizona v. Manypenny, 451 U.S. 232, 242, 101 S.Ct. 1657, 68 L.Ed.2d 58 (1981) (quoting Willingham v. Morgan, 395 U.S. 402, 407, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969)). And the command to interpret section 1442 liberally hasn't come only from the Supreme Court. When the Court held that federal agencies didn't have any removal rights under a prior version of section 1442, Congress amended the statute to reverse the decision. See Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund, 500 U.S. 72, 76, 79 n. 5, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991); Federal Courts Improvement Act of 1996. Pub.L. No. 104-317, § 206, 110 Stat. 3847, 3850.
>
> We take from this history a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal. And for good reason. As Judge Friendly wrote, "[s]ection 1442,

---

[1] This omission is not only alarming as a failure to cite clear direction on the issue from the Ninth Circuit but is surprising as Plaintiff's counsel in this matter was also counsel for plaintiff in the Durham case and made the argument that was rejected by the Ninth Circuit.

although dealing with individuals, vindicates also the interests of government itself; upon the principle that it embodies 'may depend the possibility of the general government's preserving its own existence.' " Bradford v. Harding, 284 F.2d 307, 310 (2d Cir.1960) (quoting Tennessee v. Davis, 100 U.S. 257, 262, 25 L.Ed. 648 (1879)). Davis explains that the government "can act only through its officers and agents, and they must act within the States. Davis, 100 U.S. at 263, 25 L.Ed. 648. Federal government officers and their agents occasionally get into trouble when they act within the States-whether they're enforcing unpopular tariffs in South Carolina in the 1830s, killing recalcitrant moonshiners in self-defense in Tennessee in the 1880s, or exposing servicemen to asbestos to make military aircraft in the 1970s. If the federal government can't guarantee its agents access to a federal forum if they are sued or prosecuted, it may have difficulty finding anyone willing to act on its behalf.

Id. at 1252-1253.

In Durham the Ninth Circuit makes it very clear that section 1442 is to be interpreted broadly in favor of removal and the language of the Court as set forth in the opinion leaves no room for reasonable disagreement or misunderstanding on this issue. Plaintiff's assertion to the contrary is incorrect and must be flatly rejected.[2]

Furthermore, the Supreme Court has stated that when removing a case under section 1442, "[w]e therefore do not require the officer to virtually 'win his case before he can have it removed.'" Jefferson County v. Acker, 527 U.S. 423, 431 (1999) (citation omitted). All that is required is that the removing officer present a "colorable federal defense" to justify the removal. Id. In fact, in Jefferson County, the Supreme Court ultimately rejected the respondents claims for federal officer immunity but held that the matter was still properly removed to federal court for evaluation of the proffered defense as it was a "colorable federal defense." Id.

---

[2] Similarly Plaintiff's shameful allegation that the removal sought in this case by UTC is a tactic to delay this matter from resolution should be rejected as well. Plaintiff supports this allegation with no facts as to UTC in this matter but again cites a diversity-removal case. To assert that every removal is done with the intent to delay is ludicrous. Here, UTC seeks a federal forum for evaluation of its military contractor immunity defense which is its right under the code. In fact, United Technologies Corporation has a long history of asserting its right to this defense in federal court. See Boyle v. United Technologies Corporation, 487 U.S. 500 (1988).

5
OPPOSITION TO MOTION TO REMAND
CASE NO. C 08-03317 VRW

SFOiManage/074908/000541/160213/1

## B. UTC PRESENTS A COLORABLE FEDERAL DEFENSE

Plaintiff suggests that UTC's removal petition and supporting papers fail to present a colorable federal defense, in this case military contractor immunity. Plaintiff claims that, to properly remove this matter, UTC is obligated to establish that the Air Force jet engines in question were not commercially available and that UTC is obligated to include military specifications or declarations of military inspectors. Further Plaintiff argues that the sworn declaration of longtime UTC engineer Allan Shiffler lacks the necessary foundation for his statements that the United States military was involved with and controlled the design and manufacture of the jet engines that were made for the United States Air Force that are in question.

### 1. In Re Hawaii is consistent with Boyle and requires that the government be involved with the design of the product as opposed to purchasing an already available product that was not designed for military use.

The test set forth in Boyle v. United Technologies Corporation, 487 U.S. 500, 511 (1988), contains three straightforward prongs: 1) that the United States approved reasonably precise specifications for the equipment in question; 2) The equipment conformed to those specifications; and 3) that the contractor warned the United States about any dangers in the use of the equipment that were known to the contractor but not to the United States. Plaintiff argues that UTC's removal runs afoul of the holding in In Re Hawaii Fed. Asbestos Cases, 960 F.2d 806 (9th Cir. 1992). In Re Hawaii reviewed summary judgments granted on military contractor immunity grounds where the product in question was pipe insulation that was developed independently of the United States government by private civilians for use in the private sector. Id. at 811. The court specifically found that the "products have not been developed on the basis of involved judgments made by the military but in response to the broader needs and desires of the end-users in the private sector. Id. The United States Military simply purchased a product already on the market that had not been developed with any military input or purpose but just happened to fit military specifications and was commercially available. In fact, by

1  comparison, the U.S. military was a not a major consumer of the product. Id. at 811-812. Based
2  on these facts, the pipe insulation considered in In Re Hawaii failed the first prong of the Boyle
3  test in that the United States did not approve nor was it involved in the design/specification
4  process the led to the manufacture of the product.

5        In contrast to the pipe insulation that was at issue in In Re Hawaii, this case involves jet
6  engines that were designed solely for military use with the government making involved
7  judgments and approving all plans and parts. In support of this assertion UTC has produced the
8  Declaration of Allan Shiffler, a longtime Pratt & Whitney (UTC) aerospace engineer who was
9  present at Pratt & Whitney during the administration of the J57 and TF33 programs and actually
10 participated in the programs that created the engines in question. Declaration of Allan J. Shiffler,
11 June 24, 2008, at ¶¶ 2-10 ("Shiffler dec."). His declaration makes clear that the U.S. Military
12 was involved and approved the design including all drawings, materials and parts of the jet
13 engines in question. Id. Mr. Shiffler was personally present and interacted with the U.S.
14 military personnel and attests to this fact by his own personal knowledge. Id. at ¶¶ 2, 4, 6, 9). In
15 fact, the U.S. Military provided extensive and detailed performance and construction
16 specifications for the engines including each and every part to be used. Id. at 10.

17 **2. Allan Shiffler has personal knowledge of the fact that the United States**
18 **Government approved reasonably precise specifications relating to the jet engines in**
19 **question and that the engines conformed to those specifications.**

20       Plaintiff claims that because the detailed drawings of the engines that were approved by
21 or provided by the U.S. Military are not included in the removal petition that the declaration of
22 Allan Shiffler should be rejected. There is no evidence before this Court that such drawings still
23 exist nor is there any evidence that such drawings can be produced due to national security
24 reasons. What this Court does have to review are the sworn statements of a Pratt & Whitney
25 (UTC) aerospace engineer who worked on the programs at issue and personally interacted with
26 the U.S. Military personnel that controlled the design and manufacture of the engines in
27 question. Shiffler dec at ¶¶ 2-10. He was present and saw the drawings, the approval

process, and the interaction between the Pratt & Whitney team and the U.S. Military in the design and construction of the jet engines that powered the combat aircraft at issue in this case. Id. In fact, the statements contained in the Shiffler declaration are better supported and more detailed than those that the court in Machnik found were sufficient to support a removal under section 1442. Machnik v. Buffalo Pumps, 506 F.Supp.2d 99, 103-104 (D.Conn.2007).

In fact, the Machnik opinion is directly on point with this case. In Machnik, General Electric (GE) was pursued in a state court action for products it manufactured and supplied to the United States Navy for use on Navy Vessels. GE joined with another defendant in removing the case to federal court on the basis of 28 U.S.C. § 1442(a)(1) for military contractor immunity. Id. at 102. Plaintiff moved the district court to remand the case back to the state. The federal court hearing the remand motion recognized that "removal should not be frustrated by a narrow, grudging interpretation" (citation omitted) and that the removing party is not required to establish that he will prevail on the case for a removal to be proper. Id.

In Machnik, GE presented the court with the Affidavit of a retired Navy Rear Admiral who had personal knowledge of the contracts that existed between the Navy and its contractors. Id. at 103. The Affidavit set forth that the Navy exercised complete control over every aspect of all equipment supplied by contractors and that any such equipment not in total compliance with the Navy's specifications would have been rejected. Id. The Machnik court found that the Rear Admiral's Affidavit was sufficient to establish that a colorable defense federal defense existed as to GE under the first two Boyle prongs. Id. The Affidavit did not attach any of the military specifications or other documents that were referenced in the body of the declaration and sets forth evidence of the involvement of the U.S. Government in the design and manufacture of equipment supplied by its contractors for use on Naval vessels very generally as to the equipment and contractors in question. See Affidavit of Admiral Ben J. Lehman attached as Exhibit "A" to the Declaration of Lance Wilson in support of UTC's opposition to Plaintiff's motion for remand. See also UTC's request for Judicial Notice.

In the instant case the evidence is even more compelling than that in <u>Machnik</u>. While the Rear Admiral was not a GE representative and gave general statements about unidentified equipment supplied by unidentified contractors to the U.S. Navy, here UTC presents the declaration of a Pratt & Whitney aerospace engineer, Allan Shiffler, who actually participated in the program that created and supplied the military equipment at issue in this case. Plaintiff does not seem to dispute that Shiffler's declaration confirms that the engines in question conformed to the reasonably precise specifications or that UTC . Shiffer dec. at ¶ 11. Similarly, Plaintiff does not seem to dispute that UTC failed to warn the United States about any danger in the use of the equipment in question known to UTC but not to the United States as UTC had no such knowledge related to asbestos-containing components and the United States had state of the art knowledge on the issue. Shiffler dec. at ¶ 12. Declaration of William P. Ringo ¶¶ 8-10.

Plaintiff relies on <u>Snowdon v. A.W. Chesteron Company, et al.</u>, 366 F.Supp.2d 157 (D.Me.2005) and <u>Hilbert v. McDonnell Douglass Corp.</u>, 529 F.Supp.2d. 187 (D. Mass. 2008) in an attempt to persuade this Court that UTC's removal petition was somehow insufficient. Plaintiff is incorrect as these cases are clearly distinguishable from the present matter.

In <u>Snowdon</u>, the court's "concern" was that the removing party had available key and crucial documents upon which the removal was based but opted not to provide these documents to the court. <u>Snowden</u>, 366 F.Supp.2d at 165. Here, UTC establishes a colorable claim based on the personal knowledge of Allan J. Shiffler.  Additionally, there is no evidence before this Court that UTC is intentionally withholding drawings or specifications. In fact, UTC is prohibited from disclosing even unclassified technical data relating to U.S. Military aerospace technology without approval from the Secretary of Defense. <u>See</u> Department of Defense Directive No. 5230.25 attached as Exhibit "B" to the Declaration of Lance Wilson in support of UTC's opposition to Plaintiff's motion for remand. <u>See also</u> UTC's request for Judicial Notice.

In <u>Hilbert</u>, the court was evaluating a federal officer removal solely of a state failure to warn claim. <u>Hilbert</u>, 529 F.Supp.2d at 192. Here, UTC has removed a design defect claim as

well as a failure to warn claim. As such, the analysis performed in <u>Hilbert</u> would not be applicable to each basis for removal in the instant case and either claim justifies this removal.

### C. PLAINTIFF OFFERS NO AUTHORITY OR ARGUMENT IN SUPPORT OF HIS REQUEST TO STRIKE THE RINGO DECLARATION OR SEVER THE OTHER DEFENDANTS AND REMAND THE CASE AS TO THE OTHER DEFENDANTS.

Plaintiff's notice of this motion states that he is moving to strike the declarations of Shiffler and Ringo. While UTC has shown this Court that Plaintiff's arguments as to the Shiffler declaration are not valid or well-founded, Plaintiff makes no arguments specific to the Ringo declaration. The Ringo declaration (which includes Dr. Ringo's CV) sets forth considerable education, experience and study obtained/performed by Dr. Ringo which qualifies him and his statements regarding state of the art knowledge of hazards of asbestos by the U.S. Military and aerospace industry relevant to this case. See Declaration of William P. Ringo, June 25, 2008. See also Fed. R. Evid. 702-704. Plaintiff's motion sets forth no argument or authorities for this Court to conclude otherwise.

### D. PLAINTIFF'S REQUEST FOR SANCTIONS SHOULD BE DENIED.

As the Ninth Circuit ruling in <u>Durham</u> makes clear, where there is an objectively reasonable basis for removal, sanctions are improper. <u>Durham</u>, 445 F.3d at 1251, 1254. Because there exists an objectively reasonable basis for the removal and sanctions would be improper.

### IV. CONCLUSION

Based on the points and authorities herein, this Court should deny Plaintiff's motion to remand as UTC has established that it has a colorable claim for military contractor immunity.

DATED: August 26, 2008                    TUCKER ELLIS & WEST LLP

By: _____
Lance Wilson
Attorneys for Defendant
UNITED TECHNOLOGIES
CORPORATION