1   TUCKER ELLIS & WEST LLP
    CURTISS L. ISLER STATE BAR NO. 146903
2   515 South Flower Street
    Forty Second Floor
3   Los Angeles, CA  90071-2223
    Telephone:  213.430.3400
4   Facsimile:  213.430.3409
    Email: curt.isler@tuckerellis.com
5
    TUCKER ELLIS & WEST LLP
6   LANCE D. WILSON STATE BAR NO. 183852
    135 Main Street, Suite 700
7   San Francisco, California 94105
    Telephone:  (415) 617-2400
8   Facsimile:  (415) 617-2409
    Email: lance.wilson@tuckerellis.com
9
    Attorneys for Defendant
10  UNITED TECHNOLOGIES CORPORATION

11

12                  UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14

15  FINAS BELK and ANNIE BELK,          |  Case No. **C 08-03317 VRW**

16                Plaintiffs,            |  **DECLARATION OF LANCE WILSON IN
                                         |  SUPPORT OF DEFENDANT UNITED
17          v.                           |  TECHNOLOGIES CORPORATION'S
                                         |  OPPOSITION TO MOTION TO
18  BUCYRUS INTERNATIONAL, INC., et al   |  REMAND**

19                Defendants.            |  Date:  September 18, 2008
                                         |  Time:  2:30 p.m.
20                                       |  Dept.:  6, 17th Floor

21      I, Lance Wilson, declare as follows:

22      1.    I am an attorney licensed to practice law in the State of California and before the

23  United States District Court for the Northern District of California, and I am Counsel in the law

24  firm of Tucker Ellis & West LLP, attorneys for defendant United Technologies Corporation

25  ("UTC").

26      2.    I make this declaration in support of UTC's Opposition to Plaintiffs' Motion for

27  Remand.

28                                       1
                        DECLARATION IN SUPPORT OF OPPOSITION TO
                                   MOTION TO REMAND
                            CASE NO.  C 08-3317 VRW

1    3.    Attached hereto as Exhibit A is a true and correct copy of the Affidavit of

2  Admiral Ben J. Lehman submitted in the case of <u>Machnik v. Buffalo Pumps</u>, 506 F.Supp.2d 99,

3  103-104 (D.Conn.2007) as downloaded from PACER, the Public Access to Court Electronic

4  Documents service.

5    4.    Attached hereto as Exhibit B is a true and correct copy of the Department of

6  Defense Directive Number 5230.25, dated November 6, 1984, incorporating change 1, August

7  18, 1995.

8    I declare under penalty of perjury under the laws of the United States of America that the

9  foregoing is true and correct.  Executed this 28th Day of August, 2008.

10

11

12

13

14  By:

15  Lance Wilson, Declarant

16

17

18

19

20

21

22

23

24

25

26

27

28

2

DECLARATION IN SUPPORT OF OPPOSITION TO
MOTION TO REMAND
CASE NO.  C 08-3317 VRW

**EXHIBIT  A**

## AFFIDAVIT OF ADMIRAL BEN J. LEHMAN, U.S. NAVY, RET.

1.    I am a retired Rear Admiral of the United States Navy.  Before joining the Navy in 1942, I received a Bachelor of Science degree in Mechanical Engineering from the College of the City of New York.  After joining the Navy, I was ordered to study naval architecture and marine engineering at Massachusetts Institute of Technology (MIT).  Later, I completed the United States Post-Graduate School program in Naval Engineering Design.  I received a Master of Science in Mechanical Engineering from Harvard University in 1949.  I have also studied Design Philosophy and Advanced Stress Analysis at Stanford University.  While in the United States Navy, I served as Ship Superintendent and Planning Officer at the Brooklyn Navy Yard between 1942 and 1944, as a Ship Superintendent at the San Francisco Naval Shipyard from 1950 and 1952, and as a Planning Officer at the Assistant Industrial Manager Office in San Francisco from 1952 to 1954.  I was promoted to Rear Admiral in 1977 in the Naval Reserve.    I worked as an engineer at General Electric Company between 1946 and 1948.  I held the positions of Director of Engineering and Vice-President of Engineering at two major ship building companies between 1969 and 1975.  During all these periods I have maintained close contact with the U.S. Navy, including periods of active duty in the Department of Defense and the Naval Sea Systems Command in Washington, D.C.  I have been an independent consultant since 1975.  I have personal knowledge of the facts contained herein.

2.    I submit this Affidavit to attest to the level of supervision and control by the United States Navy and its officers over every aspect of the design and manufacture of equipment intended for installation on Navy vessels.

3.    During my tenure in the Navy and as Ship Superintendent, I was personally involved with the supervision or oversight of ship alterations and equipment overhauls at the New York Naval Shipyard (formerly the Brooklyn Navy Yard).  Any deviation from military specifications of

NJ/130115v1

equipment to be installed on ships would have resulted in significant problems and probable rejection of the equipment. The Navy could not, and did not, permit its contractors to implement any changes because every aspect of every item of equipment had to be: (1) functionally compatible with every other equipment and with available materials from the Navy Supply System; (2) compatible with the shipyard practices, training, tools and capabilities; and (3) consistent with the ability of the crew to maintain the ship during its service when shipyard help was unavailable using materials carried onboard.

4.      In the 1940s and afterward, the Navy had complete control over every aspect of each piece of equipment. Military specifications governed every characteristic of the equipment used on Navy ships, including the instructions and warnings. Drawings for nameplates, texts of instruction manuals, and every other document relating to construction, maintenance, and operation of the vessel was approved by the Navy. This control included the decision of what warnings should or should not be included. Thus, the Navy controlled the decision making with respect to instructions and warnings on every piece of equipment.

5.      Furthermore, the Navy had specifications as to the nature and content of all written material that was delivered with each piece of equipment, including turbines. The Navy was intimately involved with and had final approval of all technical and engineering drawings, operating manuals, safety or hazard information and any other written information that accompanied a piece of equipment. The Navy determined the nature of hazards to be subject to any precautionary labeling and the content of any such labeling. In short, the Navy dictated every aspect of the design, manufacture, installation, overhaul, written documentation and warnings associated with its ships and did not permit deviation from any of its contractors.

NJ/130115v1

I declare under penalty of perjury that the foregoing is true and accurate.

Executed this _____ day of October, 2004

Ben J. Lehman, Rear Admiral U.S. Navy, Ret.

Sworn and subscribed to before me
on this _____ day of October, 2004

Notary Public

L. McKAY
Notary Public - State of Nevada
Appointment Recorded in Douglas County
No: 99-36380-5 - Expires June 10, 2007

**EXHIBIT  B**



# Department of Defense
# DIRECTIVE

NUMBER 5230.25
November 6, 1984

Incorporating Change 1, August 18, 1995

USDR&E

SUBJECT: Withholding of Unclassified Technical Data From Public Disclosure

References: (a) Title 10, United States Code, Section 140c, as added by Public Law 98-94, "Department of Defense Authorization Act, 1984," Section 1217, September 24, 1983
   (b) Executive Order 12470, "Continuation of Export Control Regulations," March 30, 1984
   (c) Public Law 90-629, "Arms Export Control Act," as amended (22 U.S.C. 2751 et seq.)
   (d) through (n), see enclosure 1

## 1. PURPOSE

Under reference (a), this Directive establishes policy, prescribes procedures, and assigns responsibilities for the dissemination and withholding of technical data.

## 2. APPLICABILITY AND SCOPE

2.1. Reference (a) applies to all unclassified technical data with military or space application in the possession of, or under the control of, a DoD Component that may not be exported lawfully without an approval, authorization, or license under E.O. 12470 (reference (b)) or the Arms Export Control Act (reference (c)). However, the application of this Directive is limited only to such technical data that disclose critical technology with military or space application. The release of other technical data shall be accomplished in accordance with DoD Instruction 5200.21 (reference (d)) and DoD 5400.7-R (reference (e)).

1

*DODD 5230.25, November 6, 1984*

2.2. This Directive:

2.2.1. Applies to the Office of the Secretary of Defense (OSD) and activities supported administratively by OSD, the Military Departments, the Organization of the Joint Chiefs of Staff, the Defense Agencies, and the Unified and Specified Commands (hereafter referred to collectively as "DoD Components").

2.2.2. Does not modify or supplant the regulations promulgated under E.O. 12470 (reference (b)) or the Arms Export Control Act (reference (c)) governing the export of technical data, that is, 15 CFR 379 of the Export Administration Regulations (EAR) (reference (f)) and 22 CFR 125 of the International Traffic in Arms Regulations (ITAR) (reference (g)).

2.2.3. Does not introduce any additional controls on the dissemination of technical data by private enterprises or individuals beyond those specified by export control laws and regulations or in contracts or other mutual agreements, including certifications made pursuant to paragraph 3.2., below. Accordingly, the mere fact that the Department of Defense may possess such data does not in itself provide a basis for control of such data pursuant to this Directive.

2.2.4. Does not introduce any controls on the dissemination of scientific, educational, or other data that qualify for General License GTDA under subsection 379.3 of the EAR (reference (f)) (see enclosure 3) or for general exemptions under subsection 125.11 of the ITAR (reference (g)) (see enclosure 4).

2.2.5. Does not alter the responsibilities of the DoD Components to protect proprietary data of a private party in which the Department of Defense has "limited rights" or "restricted rights" (as defined in subsections 9-201(c) and 9-601(j) of the DoD Federal Acquisition Regulation Supplement, reference or which are authorized to be withheld from public disclosure under 5 U.S.C. 552(b) (4) (reference (i))).

2.2.6. Does not pertain to, or affect, the release of technical data by the DoD Components to foreign governments, international organizations, or their respective representatives or contractors, pursuant to official agreements or formal arrangements with the U.S. Government, or pursuant to U.S. Government-licensed transactions involving such entities or individuals. In the absence of such U.S. Government-sanctioned relationships, however, this Directive does apply.

2.2.7. Does not apply to classified technical data. After declassification, however, dissemination of such data that are within the scope of paragraph 2.1., above, is governed by this Directive.

*DODD 5230.25, November 6, 1984*

3. <u>DEFINITIONS</u>

    3.1.  Except for the definition in paragraph 3.2., terms used in this Directive are defined in enclosure 2.

    3.2.  <u>Qualified U.S. Contractor</u>. [1]   A private individual or enterprise (hereinafter described as a "U.S. contractor") that, in accordance with procedures established by the Under Secretary of Defense for Research and Engineering, certifies, as a condition of obtaining export-controlled technical data subject to this Directive from the Department of Defense, that:

        3.2.1.  The individual who will act as recipient of the export-controlled technical data on behalf of the U.S. contractor is a U.S. citizen or a person admitted lawfully into the United States for permanent residence and is located in the United States.

        3.2.2.  Such data are needed to bid or perform on a contract with the Department of Defense, or other U.S. Government Agency, or for other legitimate business purposes [2] in which the U.S. contractor is engaged, or plans to engage.  The purpose for which the data are needed shall be described sufficiently in such certification to permit an evaluation of whether subsequent requests for data, pursuant to subparagraph 5.4.2., below, are related properly to such business purpose.

        3.2.3.  The U.S. contractor acknowledges its responsibilities under U.S. export control laws and regulations (including the obligation, under certain circumstances, to obtain an export license prior to the release of technical data within the United States) and agrees that it will not disseminate any export-controlled technical data subject to this Directive in a manner that would violate applicable export control laws and regulations.

------------

    [1] Canadian contractors may be qualified in accordance with this Directive for technical data that do not require a license for export to Canada under section 125.12 of the ITAR (reference (g)) and section 379.4(d) and 379.5(e) of the EAR (reference (f)) by submitting an equivalent certification to the U.S. Department of Defense.

    [2] This does not require a contract with or a grant from the U.S. Government.

*DODD 5230.25, November 6, 1984*

3.2.4.  The U.S. contractor also agrees that, unless dissemination is permitted by paragraph 5.8., below, it will not provide access to export-controlled technical data subject to this Directive to persons other than its employees or persons acting on its behalf, without the permission of the DoD Component that provided the technical data.

3.2.5.  To the best of its knowledge and belief, the U.S. contractor knows of no person employed by it, or acting on its behalf, who will have access to such data, who is debarred, suspended, or otherwise ineligible from performing on U.S. Government contracts; or has violated U.S. export control laws or a certification previously made to the Department of Defense under the provisions of this Directive.

3.2.6.  The U.S. contractor itself is not debarred, suspended, or otherwise determined ineligible by any Agency of the U.S. Government to perform on U.S. Government contracts, has not been convicted of export control law violations, and has not been disqualified under the provisions of this Directive.

When the certifications required by subparagraphs 3.2.5. and 3.2.6., above, cannot be made truthfully, the U.S. contractor may request the certification be accepted based on its description of extenuating circumstances.

## 4.  POLICY

4.1.  In accordance with 10 U.S.C. 140c (reference (a)), the Secretary of Defense may withhold from public disclosure, notwithstanding any other provision of law, any technical data with military or space application in the possession of, or under the control of, the Department of Defense, if such data may not be exported lawfully without an approval, authorization, or license under E.O. 12470 (reference (b)) or the Arms Export Control Act (reference (c)).  However, technical data may not be withheld under this section if regulations promulgated under either the Order or Act authorize the export of such data pursuant to a general, unrestricted license or exemption in such regulations.  (Pertinent portions of such regulations are set forth at enclosures 3 and 4)

4.2.  Because public disclosure of technical data subject to this Directive is tantamount to providing uncontrolled foreign access, withholding such data from public disclosure, unless approved, authorized, or licensed in accordance with export control laws, is necessary and in the national interest.  Unclassified technical data that are not governed by this Directive, unless otherwise restricted, shall continue to be made available to the public as well as to State and local governments.

*DODD 5230.25, November 6, 1984*

4.3. Notwithstanding the authority provided in paragraph 4.1., above, it is DoD policy to provide technical data governed by this Directive to individuals and enterprises that are determined to be currently qualified U.S. contractors, when such data relate to a legitimate business purpose for which the contractor is certified. However, when such data are for a purpose other than to permit the requester to bid or perform on a contract with the Department of Defense, or other U.S Government Agency, and the significance of such data for military purposes is such that release for purposes other than direct support of DoD activities may jeopardize an important U.S. technological or operational advantage, those data shall be withheld in such cases.

4.4. This Directive may not be used by the DoD Components as authority to deny access to technical data to the Congress, or to any Federal, State, or local governmental agency that requires such data for regulatory or other official governmental purposes. Any such dissemination will include a statement that the technical data are controlled by the Department of Defense in accordance with this Directive.

4.5. The authority provided herein may not be used to withhold from public disclosure unclassified information regarding DoD operations, policies, activities, or programs, including the costs and evaluations of performance and reliability of military and space equipment. When such information does contain technical data subject to this Directive, the technical data shall be excised from that which is disclosed publicly.

4.6. This Directive may not be used as a basis for the release of "limited rights" or "restricted rights" data as defined in subsections 9-201(c) and 9-601(j) of the DoD Federal Acquisition Regulation Supplement (reference (h)) or that are authorized to be withheld from public disclosure under the Freedom of Information Act (FOIA) (reference (i)).

4.7. This Directive may not be used to provide protection for technical data that should be classified in accordance with E.O. 12356 and DoD 5200.1-R (references (j) and (k)).

4.8. This Directive provides immediate authority to cite 5 U.S.C. 552(b)(3) (reference (i)) as the basis for denials under the FOIA (reference (i)) of technical data currently determined to be subject to the provisions of this Directive.

*DODD 5230.25, November 6, 1984*

5. <u>PROCEDURES</u>

All determinations to disseminate or withhold technical data subject to this Directive shall be consistent both with the policies set forth in section 4., above, and with the following procedures:

  5.1.  Requests for technical data shall be processed in accordance with DoD Directive 5230.24 and DoD Instruction 5200.21 (references (l) and (d)).  FOIA (reference (i)) requests for technical data subject to this Directive shall be handled in accordance with the procedures established in DoD 5400.7-R (reference (e)).  Such FOIA requests for technical data currently determined to be subject to the withholding authority effected by this Directive shall be denied under reference (i), citing the third exemption to mandatory disclosure, and the requester shall be referred to the provisions of this Directive permitting access by qualified U.S. contractors.

  5.2.  Upon receipt of a request for technical data in the possession of, or under the control of, the Department of Defense, the controlling DoD office shall determine whether such data are governed by this Directive.  The determination shall be based on the following:

    5.2.1.  The office's finding [3] that such data would require an approval, authorization, or license for export under E.O. 12470 (reference (b)) or the Arms Export Control Act (reference (c)), and that such data may not be exported pursuant to a general, unrestricted license (section 379.3, EAR (reference (f)) (see enclosure 3) or exemption (section 125.11, ITAR (reference (g))) (see enclosure 4)).

    5.2.2.  The office's judgment that the technical data under consideration disclose critical technology with military or space application.  For purposes of making this determination, the Militarily Critical Technologies List (MCTL) (reference (m)) shall be used as general guidance.  The controlling DoD office may request assistance in making such a determination from the Office of the Under Secretary of Defense for Research and Engineering (OUSDR&E) in accordance with procedures established by that office.

  5.3.  The controlling DoD office shall ensure that technical data determined to be governed by this Directive are marked in accordance with DoD Directive 5230.24 (reference (l)).

---

[3] May require consultation with the Department of State or the Department of Commerce, as appropriate.

*DODD 5230.25, November 6, 1984*

5.4.  The controlling DoD office shall authorize release of technical data governed by this Directive to currently qualified U.S. contractors only, as defined in paragraph 3.2., above, unless one of the apply:

5.4.1.  The qualification of the U.S. contractor concerned has been temporarily revoked in accordance with paragraph 5.5., below; or

5.4.2.  The requested data are judged to be unrelated to the purpose for which the qualified U.S. contractor is certified.  When release of technical data is denied in accordance with this paragraph, the controlling DoD office shall request additional information sufficient to explain the intended use of the requested data and, if appropriate, request a new certification (see paragraph 3.2., above) describing the intended use of the requested data; or

5.4.3.  The technical data are being requested for a purpose other than to permit the requester to bid or perform on a contract with the Department of Defense or other U.S. Government Agency, in which case the controlling DoD office shall withhold such data if it has been determined by the DoD Component focal point (see subparagraph 6.5.3., below) that the significance of such data for military purposes is such that release for purposes other than direct support of DoD-approved activities may jeopardize an important technological or operational military advantage of the United States.

5.5.  Upon receipt of credible and sufficient information that a qualified U.S. contractor has (a) violated U.S. export control law, (b) violated its certification, (c) made a certification in bad faith, or (d) made an omission or misstatement of material fact, the DoD Component shall revoke temporarily the U.S. contractor's qualification. Such revocations having the potential for compromising a U.S. Government investigation may be delayed.  Immediately upon such revocation, the DoD Component shall notify the contractor and the OUSDR&E.  Such contractor shall be given an opportunity to respond in writing to the information upon which the temporary revocation is based before being disqualified.  Any U.S. contractor whose qualification has been revoked temporarily may be reinstated upon presentation of sufficient information showing that the basis for such revocation was in error or has been remedied.

5.6.  When the basis for a contractor's temporary revocation cannot be removed within 20 working days, the DoD Component shall recommend to the OUSDR&E that the contractor be disqualified.

*DODD 5230.25, November 6, 1984*

5.7.  Charges for copying, certifying, and searching records rendered to requesters shall be levied in accordance with DoD Instruction 7230.7 (reference (n)).  Normally, only one copy of the same record or document will be provided to each requester.  Any release to qualified U.S. contractors of technical data controlled by this Directive shall be accompanied by a notice to the recipient as set forth in enclosure 5.

5.8.  Qualified U.S. contractors who receive technical data governed by this Directive may disseminate such data for purposes consistent with their certification without the prior permission of the controlling DoD office or when such dissemination is:

5.8.1.  To any foreign recipient for which the data are approved, authorized, or licensed under E.O. 12470 (reference (b)), or the Arms Export Control Act (reference (c)).

5.8.2.  To another currently qualified U.S. contractor (as defined in paragraph 3.2., above, including existing or potential subcontractors, but only within the scope of the certified legitimate business purpose of such recipient).

5.8.3.  To the Departments of State and Commerce, for purposes of applying for appropriate approvals, authorizations, or licenses for export under the Arms Export Control Act (reference (c)) or E.O. 12470 (reference (b)).  Any such application shall include a statement that the technical data for which such approval, authorization, or license is sought are controlled by the Department of Defense in accordance with this Directive.

5.8.4.  To the Congress or any Federal, State, or local governmental agency for regulatory purposes, or otherwise as may be required by law or court order.  Any such dissemination shall include a statement that the technical data are controlled by the Department of Defense in accordance with this Directive.

5.9.  A qualified U.S. contractor desiring to disseminate technical data subject to this Directive in a manner not permitted expressly by the terms of this Directive shall seek authority to do so from the controlling DoD office.

5.10.  Any requester denied technical data, or any qualified U.S. contractor denied permission to re-disseminate such data, pursuant to this Directive, shall be provided promptly a written statement of reasons for that action, and advised of the right to make a written appeal of such determination to a specifically identified appellate authority within the DoD Component.  Appeals of denials made under DoD 5400.7-R (reference (e)) shall be handled in accordance with procedures established therein.  Other appeals shall be processed as directed by the OUSDR&E.

5.11.  Denials shall cite 10 U.S.C. 140c (reference (a)) as implemented by this Directive, and, in the case of FOIA (reference (i)) denials made in reliance on this statutory authority, 5 U.S.C. 552(b) (3) (reference (i)).  Implementing procedures shall provide for resolution of any appeal within 20 working days.

6.  RESPONSIBILITIES

6.1.  The Under Secretary of Defense for Research and Engineering (USDR&E) shall have overall responsibility for the implementation of this Directive and shall designate an office to:

6.1.1.  Administer and monitor compliance with this Directive.

6.1.2.  Receive and disseminate notifications of temporary revocation in accordance with paragraph 5.5., above.

6.1.3.  Receive recommendations for disqualification made in accordance with paragraph 5.6., above, and act as initial disqualification authority.

6.1.4.  Provide, when necessary, technical assistance to the DoD Components in assessing the significance of the military or space application of technical data that may be withheld from public disclosure under this Directive.

6.1.5.  Establish procedures to develop, collect, and disseminate certification statements and ensure their sufficiency, accuracy, and periodic renewal, and to make final determinations of qualification.

6.1.6.  Ensure that the requirements of this Directive are incorporated into the DoD Federal Acquisition Regulation Supplement (reference (h)) for optional application to contracts involving technical data governed by this Directive.

*DODD 5230.25, November 6, 1984*

6.1.7.  Develop, in conjunction with the General Counsel, Department of Defense, guidelines for responding to appeals.

6.1.8.  Develop procedures to ensure that the DoD Components apply consistent criteria in authorizing exceptions under paragraph 5.9., above.

6.1.9.  *Establish procedures and appropriate mechanisms for the certification of qualified U.S. contractors, pursuant to subparagraph 6.1.5., above. DoD Form 2345, "Military Critical Technical Data Agreement" with its associated instructions for completion and submission is established for this purpose.*

6.1.10.  Take such other actions that may be required to ensure consistent and appropriate implementation of this Directive within the Department of Defense.

6.2.  The <u>Under Secretary of Defense for Policy</u> shall:

6.2.1.  Develop and promulgate, as required, policy guidance to DoD Components for implementing this Directive.

6.2.2.  Develop procedures with the Departments of State and Commerce to ensure referral of export cases involving technical data governed by this Directive to the Department of Defense.

6.3.  The <u>Assistant to the Secretary of Defense for Public Affairs</u> shall:

6.3.1.  Monitor the implementation of provisions of this Directive that pertain to DoD 5400.7-R (reference (e)).

6.3.2.  Provide such other assistance as may be necessary to ensure compliance with this Directive.

6.4.  The <u>General Counsel of the Department of Defense</u> shall:

6.4.1.  Assist in carrying out the provisions of this Directive by advising DoD Components with respect to the statutory and regulatory requirements governing the export of technical data.

6.4.2.  Advise the USD(A&T) regarding consistent and appropriate implementation of this Directive.

6.5.  The <u>Heads of the DoD Components</u> shall:

6.5.1.  As the delegated authority, have the option to re-delegate the authority to withhold technical data in accordance with this Directive.

6.5.2.  Disseminate and withhold from public disclosure technical data subject to this Directive in a manner consistent with the policies and procedures set forth herein.

6.5.3.  Designate a focal point to:

6.5.3.1.  Ensure implementation of this Directive;

6.5.3.2.  Identify classes of technical data the release of which is governed by subparagraph 5.4.3., above;

6.5.3.3.  Act on appeals relating to case-by-case denials of technical data;

6.5.3.4.  Suspend a contractor's qualification pursuant to paragraph 5.5., above;

6.5.3.5.  Receive and evaluate requests for reinstatement of a contractor's qualification; and, when appropriate;

6.5.3.6.  Recommend disqualification to the OUSDR&E.

6.5.4.  Promulgate and effect regulations to implement this Directive within 180 days.

6.5.5.  Disseminate technical data governed by this Directive in the manner prescribed herein, to the extent feasible, during the period after which certification procedures have been established under subparagraph 6.1.9., above, but before the DoD Components have issued implementing regulations under subparagraph 6.5.4., above. However, if such dissemination is not feasible, the DoD Component may process requests for such data in accordance with procedures in effect before the promulgation of this Directive.

*DODD 5230.25, November 6, 1984*

## 7.  EFFECTIVE DATE AND IMPLEMENTATION

This Directive is effective immediately.   Forward two copies of implementing
documents to the Under Secretary of Defense for (Research and Engineering) within
180 days.

Caspar W. Weinberger
Secretary of Defense

Enclosures - 5
    E1.  References, continued
    E2.  Definitions, continued
    E3.  Pertinent Portions of Export Administration Regulations (EAR)
    E4.  Pertinent Portions of International Traffic in Arms Regulations (ITAR)
    E5.  Notice to Accompany the Dissemination of Export-controlled Technical Data

*DODD 5230.25, November 6, 1984*

E1.  ENCLOSURE 1

REFERENCES, continued

(d)  <u>DoD Instruction 5200.21</u>, "Dissemination of DoD Technical Information,"
      September 27, 1979
(e)  <u>DoD 5400.7-R</u>, "DoD Freedom of Information Act Program," December 1980
(f)  Export Administration Regulations
(g)  International Traffic in Arms Regulations
(h)  DoD Federal Acquisition Regulation Supplement
(i)  Public Law 89-487, "Freedom of Information Act," as amended (5 U.S.C. 552(b)(3)
      and (4))
(j)  Executive Order 12356, "National Security Information," April 2, 1982
(k)  <u>DoD 5200.1-R</u>, "Information Security Program Regulation," August 1982
(l)  <u>DoD Directive 5230.24</u>, "Distribution Statements on Technical Documents,"
      November 20, 1984
(m)  Militarily Critical Technologies List, October 1984
(n)  DoD Instruction 7230.7, "User Charges," June 12, 1979

*DODD 5230.25, November 6, 1984*

E2.  ENCLOSURE 2

DEFINITIONS, continued

E2.1.1.  Controlling DoD Office.  The DoD activity that sponsored the work that generated the technical data or received the technical data on behalf of the Department of Defense and therefore has the responsibility for determining the distribution of a document containing such technical data.  In the case of joint sponsorship, the controlling office is determined by advance agreement and may be either a party, a group, or a committee representing the interested activities or the DoD Components. (The controlling DoD office is identified on each export-controlled document in accordance with DoD Directive 5230.24, reference (l).)

E2.1.2.  Critical Technology.  Technologies that consist of:

E2.1.2.1.  Arrays of design and manufacturing know-how (including technical data);

E2.1.2.2.  Keystone manufacturing, inspection, and test equipment;

E2.1.2.3.  Keystone materials; and

E2.1.2.4.  Goods accompanied by sophisticated operation, application, or maintenance know-how that would make a significant contribution to the military potential of any country or combination of countries and that may prove detrimental to the security of the United States (also referred to as militarily critical technology).

E2.1.3.  Other Legitimate Business Purposes.  Include:

E2.1.3.1.  Providing or seeking to provide equipment or technology to a foreign government with the approval of the U.S. Government (for example, through a licensed direct foreign military sale).

E2.1.3.2.  Bidding, or preparing to bid, on a sale of surplus property.

E2.1.3.3.  Selling or producing products for the commercial domestic marketplace or for the commercial foreign marketplace, providing that any required export license is obtained.

E2.1.3.4.  Engaging in scientific research in a professional capacity.

*DODD 5230.25, November 6, 1984*

E2.1.3.5.  Acting as a subcontractor to a concern described in E2.1.3.1. through E2.1.3.4. above; or

E2.1.3.6.  Selling technical data subject to this Directive in support of DoD contractors or in support of the competitive process for DoD contracts, provided such sales are limited solely to DoD contractors or potential DoD contractors who also are qualified U.S. contractors and provided such technical data are related to the purpose for which the qualified U.S. contractor is certified, or selling technical data to foreign contractors or governments overseas after receiving the required export license or approval by the U.S. Government.

E2.1.4.  <u>Potential DoD Contractor</u>.  An individual or organization outside the Department of Defense declared eligible for DoD information services by a sponsoring DoD activity on the basis of participation in one of the following programs:

E2.1.4.1.  The Department of the Army Qualitative Requirements Information Program.

E2.1.4.2.  The Department of the Navy Industry Cooperative Research and Development Program.

E2.1.4.3.  The Department of the Air Force Potential Contractor Program.

E2.1.4.4.  The DoD Scientific and Technical Information Program; or

E2.1.4.5.  Any similar program in use by other DoD Components.

E2.1.5.  <u>Public Disclosure</u>.  Making technical data available without restricting its dissemination or use.

E2.1.6.  <u>Technical Data with Military or Space Application</u>, or <u>Technical Data</u>.  Any blueprints, drawings, plans, instructions, computer software and documentation, or other technical information that can be used or be adapted for use to design, engineer, produce, manufacture, operate, repair, overhaul, or reproduce any military or space equipment or technology concerning such equipment.

E2.1.7.  <u>United States</u>.  For the purpose of this Directive, the 50 States, the District of Columbia, and the territories and possessions of the United States.

*DODD 5230.25, November 6, 1984*

E3. ENCLOSURE 3

PERTINENT PORTIONS OF EXPORT ADMINISTRATION REGULATIONS (EAR)

The following pertinent section of the EAR is provided for the guidance of DoD personnel in determining the releasability of technical data under the authority of this Directive.

Export Administration Regulations Section 379.3

"General License GTDA:  Technical Data Available to All Destinations

"A General License designated GTDA is hereby established authorizing the export to all destinations of technical data described in Section 379.3(a), (b), or (c) below:

"(a)  Data Generally Available

"Data that have been made generally available to the public in any form, including -

"(1)  Data released orally or visually at open conferences, lectures, trade shows, or other media open to the public; and

"(2)  Publications that may be purchased without restrictions at a nominal cost, or obtained without costs, or are readily available at libraries open to the public.

"The term 'nominal cost' as used in Section 379.3(a) (2), above, is intended to reflect realistically only the cost of preparing and distributing the publication and not the intrinsic value of the technical data.  If the cost is such as to prevent the technical data from being generally available to the public, General License GTDA would not be applicable.

"(b)  Scientific or Educational Data

"(1)  Dissemination of information not directly and significantly related to design, production, or utilization in industrial processes, including such dissemination by correspondence, attendance at, or participation in, meetings; or

ENCLOSURE 3

*DODD 5230.25, November 6, 1984*

"(2)  Instruction in academic institutions and academic laboratories, excluding information that involves research under contract related directly and significantly to design, production, or utilization in industrial processes.

"(c)  Patent Applications

"Data contained in a patent application, prepared wholly from foreign-origin technical data where such application is being sent to the foreign inventor to be executed and returned to the United States for subsequent filing in the U.S. Patent and Trademark Office.  (No validated export license from the Office of Export Administration is required for data contained in a patent application, or an amendment, modification, supplement, or division thereof for filing in a foreign country in accordance with the regulations of the Patent and Trademark Office 37 CFR Part 5.  See Section 370.10(j).)"

*DODD 5230.25, November 6, 1984*

E4.  ENCLOSURE 4

## PERTINENT PORTIONS OF INTERNATIONAL TRAFFIC IN ARMS REGULATIONS (ITAR)

The following pertinent section of the ITAR is provided for the guidance of DoD personnel in determining the releasability of technical data under the authority of this Directive.

### International Traffic in Arms Regulations Section 125.11
### "General Exemptions

"(a)  Except as provided in Section 126.01, district directors of customs and postal authorities are authorized to permit the export without a license of unclassified technical data as follows:

"(1)  If it is in published [4] form and subject to public dissemination by being:

"(i)  Sold at newsstands and bookstores;

"(ii)  Available by subscription or purchase without restrictions to any person or available without cost to any person;

"(iii)  Granted second class mailing privileges by the U.S. Government; or,

"(iv)  Freely available at public libraries.

"(2)  If it has been approved for public release by any U.S. Government Department or Agency having authority to classify information or material under Executive Order [12356], as amended, and other applicable Executive Orders, and does not disclose the details of design, production, or manufacture of any arms, ammunition, or implements of war on the U.S. Munitions List.

---

[4] "The burden for obtaining appropriate U.S. Government approval for the publication of technical data falling within the definition in 125.01, including such data as may be developed under other than U.S. Government contract, is on the person or company seeking publication.

*DODD 5230.25, November 6, 1984*

"(3)  If the export is in furtherance of a manufacturing license or technical assistant agreement approved by the Department of State in accordance with Part 124 of this subchapter.

"(4)  If the export is in furtherance of a contract with an Agency of the U.S. Government or a contract between an Agency of the U.S. Government and foreign persons, provided the contract calls for the export of relevant unclassified technical data, and such data are being exported only by the prime contractor.  Such data shall not disclose the details of development, engineering, design, production, or manufacture of any arms, ammunition, or implements of war on the U.S. Munitions List.  (This exemption does not permit the prime contractor to enter into subsidiary technical assistance or manufacturing license agreements, or any arrangement which calls for the exportation of technical data without compliance with Part 124 of this subchapter.)

"(5)  If it relates to firearms not in excess of caliber .50 and ammunition for such weapons, except technical data containing advanced designs, processes, and manufacturing techniques.

"(6)  If it consists of technical data, other than design, development, or production information relating to equipment, the export of which has been previously authorized to the same recipient.

"(7)  If it consists of operations, maintenance and training manuals, and aids relating to equipment, the export of which has been authorized to the same recipient. [5]

"(8)  If it consists of additional copies of technical data previously approved for export to the same recipient; or if it consists of revised copies of technical data, provided it pertains to the identical Munitions List article, and the revisions are solely editorial and do not add to the content of technology previously approved for export to the same recipient.

"(9)  If it consists solely of technical data being reexported to the original source of import.

---

[5] "Not applicable to technical data relating to Category VI(d) and Category XVI.

ENCLOSURE 4

*DODD 5230.25, November 6, 1984*

"(10)  If the export is by the prime contractor in direct support and within the technical and/or product limitations of a 'U.S. Government approved project' and the prime contractor so certifies.  The Office of Munitions Control, Department of State, will verify, upon request, those projects which are 'U.S. Government approved,' and accord an exemption to the applicant who applies for such verification and exemption, where appropriate, under this subparagraph. [6]

"(11)  If the export is solely for the use of American citizen employees of U.S. firms provided the U.S. firm certifies its overseas employee is a U.S. citizen and has a 'need to know.' [7]

"(12)  If the export is directly related to classified information, the export of which has been previously authorized to the same recipient, and does not disclose the details of design, production, or manufacture of any arms, ammunition, or implements of war on the U.S. Munitions List.

"(b)  Plant visits.  Except as restricted by the provisions of section 126.01 of this subchapter:

"(1)  No license shall be required for the oral and visual disclosure of unclassified technical data during the course of a plant visit by foreign nationals provided the data [are] disclosed in connection with a classified plant visit or the visit has the approval of a U.S. Government Agency having authority for the classification of information or material under Executive Order [12356], as amended, and other applicable Executive Orders, and the requirements of section V, paragraph [41(d)] of the Industrial Security Manual are met.

---

[6] "Classified information may also be transmitted in direct support of and within the technical and/or product limitation of such verified U.S. Government approved projects without prior department of State approval provided the U.S. party so certifies and complies with the requirements of the Department of Defense Industrial Security Manual relating to the transmission of such classified information (and any other requirements of cognizant U.S. Government departments or agencies).

[7] "Classified information may also be exported to such certified American citizen employees without prior Department of State approval provided the U.S. party complies with the requirements of the Department of Defense Industrial Security Manual relating to the transmission of such classified information (and any other requirements of cognizant U.S. Government departments or agencies).  Such technical data or information (classified or unclassified) shall not be released by oral, visual, or documentary means to any foreign person.

ENCLOSURE 4

"(2)  No license shall be required for the documentary disclosure of unclassified technical data during the course of a plant visit by foreign nationals provided the document does not contain technical data as defined in Section 125.01 in excess of that released orally or visually during the visit, is within the terms of the approved visit request, and the person in the United States assures that the technical data will not be used, adapted for use, or disclosed to others for the purpose of manufacture or production without the prior approval of the Department of State in accordance with Part 124 of this subchapter.

"(3)  No Department of State approval is required for the disclosure of oral and visual classified information during the course of a plant visit by foreign nationals provided the visit has been approved by the cognizant U.S. Defense Agency and the requirements of section V, paragraph [41(d)] of the Defense Industrial Security Manual are met."

ENCLOSURE 4

*DODD 5230.25, November 6, 1984*

E5.  ENCLOSURE 5

NOTICE TO ACCOMPANY THE DISSEMINATION OF EXPORT-CONTROLLED
TECHNICAL DATA

E5.1.1.  Export of information contained herein, which includes, in some circumstances, release to foreign nationals within the United States, without first obtaining approval or license from the Department of State for items controlled by the International Traffic in Arms Regulations (ITAR), or the Department of Commerce for items controlled by the Export Administration Regulations (EAR), may constitute a violation of law.

E5.1.2.  Under 22 U.S.C. 2778 the penalty for unlawful export of items or information controlled under the ITAR is up to 2 years imprisonment, or a fine of $100,000, or both.  Under 50 U.S.C., Appendix 2410, the penalty for unlawful export of items or information controlled under the EAR is a fine of up to $1,000,000, or five times the value of the exports, whichever is greater; or for an individual, imprisonment of up to 10 years, or a fine of up to $250,000, or both.

E5.1.3.  In accordance with your certification that establishes you as a "qualified U.S. contractor," unauthorized dissemination of this information is prohibited and may result in disqualification as a qualified U.S. contractor, and may be considered in determining your eligibility for future contracts with the Department of Defense.

E5.1.4.  The U.S. Government assumes no liability for direct patent infringement, or contributory patent infringement or misuse of technical data.

E5.1.5.  The U.S. Government does not warrant the adequacy, accuracy, currency, or completeness of the technical data.

E5.1.6.  The U.S. Government assumes no liability for loss, damage, or injury resulting from manufacture or use for any purpose of any product, article, system, or material involving reliance upon any or all technical data furnished in response to the request for technical data.

E5.1.7.  If the technical data furnished by the Government will be used for commercial manufacturing or other profit potential, a license for such use may be necessary.  Any payments made in support of the request for data do not include or involve any license rights.

*DODD 5230.25, November 6, 1984*

E5.1.8.  A copy of this notice shall be provided with any partial or complete reproduction of these data that are provided to qualified U.S. contractors.

ENCLOSURE 5